NORRIS SWETLAND & others *vs.* BOSTON & ALBANY RAILROAD COMPANY.[*]

In an action against a railroad corporation to recover for the injury of apples by freezing, as having occurred within two days during which they were in course of transportation by the defendants over their railroad in the winter, and part of the way through a cold snow storm, if there is only evidence that the apples were frozen when they arrived at their final destination, but no evidence of their condition when they were received by the defendants from a connecting railroad, over which they had been transported in the same car during the previous day, except the fact that the weather was very cold when they reached the defendants, the defendants are entitled, on their request, to a ruling that there is "no evidence in the case that the apples were delivered to them before they were frozen;" although, except the facts named, no evidence was offered to show that they were frozen before or at the time of such delivery.

If a railroad train of nine cars loaded with various lots of freight becomes obstructed by a snow storm so that four of the cars must be left behind on a cold night without shelter and the conductor is able to select which cars shall be left, and knows that one car contains goods which will be injured by freezing, he is not bound, as matter of law, to take that car forward rather than other cars containing goods of which in respect to their liability to injury by freezing he knows nothing.

CONTRACT to recover damages for the injury of a lot of apples by freezing while being transported by the defendants on their railroad.

---

[*] COLT, J., did not sit in this case.

At the trial in the superior court, before *Vose*, J., there was evidence that one hundred and forty barrels of apples, belonging to the plaintiffs, were sent by them over the New York Central Railroad, from Canandaigua, in New York, on the night of Friday, December 6, 1867, " in an ordinary, covered freight car, which was in good condition," to Albany in the same state, where they arrived on Saturday, December 7, at an hour sufficiently early to enable the car to be transferred to the defendants' railroad, of which Albany was the western terminus, and attached to a freight train of the defendants, which left Albany that evening for Springfield in this state, to which place the defendants specially contracted with the plaintiffs to transport them that night; that the train proceeded from Albany to Pittsfield without any mishap, but about the time it left Pittsfield a snow storm began, which increased so rapidly, and became so severe, that two miles east from Pittsfield the progress of the train was seriously impeded, and about half a mile further east, on an up-grade, it became stalled, and in order to draw it up the grade it was divided into two parts; and that the part which included the car containing the plaintiffs' apples was left standing on an open track in the town of Dalton over Sunday, and did not arrive at Springfield until four o'clock in the afternoon of Monday, December 9, when, on opening the barrels, all the apples were found more or less injured by frost, and those in sixty of the barrels wholly frozen and spoiled.

There was evidence that the night of Saturday, December 7, was " very cold; " that the storm was of extraordinary severity, and the snow froze on the railroad rails as it fell; and that the conductor's ears were frozen during that night. " There was no evidence offered tending to show that the apples were frozen before or at the time the defendants took them, except that the weather was very cold when they reached the defendants, and they were in the same car all the way from Canandaigua to Springfield; when the severe cold set in did not appear except as stated ; " and " there was no evidence as to the condition of the apples when they arrived at Albany, except as herein stated, and except what might be inferred from the state of the weather, which was testified to be very cold."

The defendants asked for an instruction, which the judge refused, " that there was no evidence in the case that the apples were delivered to the defendants before they were frozen." The verdict was for the plaintiffs, and the defendants alleged exceptions.

*A. L. Soule,* for the defendants.

*G. M. Stearns & M. P. Knowlton,* for the plaintiffs.

CHAPMAN, C. J. The defendants requested the court to instruct the jury that there was no evidence in the case that the apples were delivered to the defendants before they were frozen. The burden was on the plaintiffs to prove that fact. The report finds that there was no evidence tending to show that they were frozen before or at the time the defendants took them, except that the weather was very cold when they reached the defendants, and they were in the same car all the way from Canandaigua to Springfield ; that when the severe cold set in did not appear except as stated ; that there was no evidence as to the condition of the apples when they arrived at Albany, except as herein stated, and except what might be inferred from the state of the weather, which was testified to be very cold. They left Canandaigua on the night of Friday, the sixth day of December, and the car in which they were loaded was delivered to the defendants in season to be attached to a train which left Albany for Springfield in the course of the next day, and, so far as appears, at the close of the day. It does not appear that any of the barrels were opened at Albany, or until the next Monday, about four o'clock in the afternoon, at Springfield, and out of one hundred and forty barrels, sixty had been entirely ruined by frost, all were damaged, and all were more or less touched by frost. They were detained on the way by a storm which commenced after they started from Albany, but it does not appear what changes, if any, took place in the temperature.

There is nothing in all these circumstances, or in any others stated in the report, which could authorize a jury to find that the apples were delivered to the defendants at Albany before they were frozen. The court are of opinion that the defendants were entitled to the instruction requested ; and their exception must

be sustained.    As the evidence may be varied at another trial, it is not necessary to decide the other points which are the subjects of exception.                    *Exceptions sustained.*

At the new trial, before *Devens,* J., there was evidence that the apples were not frozen when they left Canandaigua Friday night, upon the New York Central Railroad, and that the car was a tight car; that the car reached Albany Saturday noon and was transferred to the defendants, and at the plaintiffs' request was attached to a freight train, which was then about to start for Springfield and would be due at West Springfield at midnight; that the weather was mild when the apples left Canandaigua, and Saturday was a mild day at Albany until the afternoon, when it grew rapidly cold, and Sunday and Monday were both cold days; that the defendants' train reached Pittsfield from Albany in due time, was there reduced from thirteen cars to nine cars, the usual number drawn by a single engine eastward from that place, and its engine and the train hands were changed; that the train, thus reorganized, and containing the car with the plaintiffs' apples, among the four cars next behind the engine, started from Pittsfield about nine o'clock in the evening, snow having begun to fall about ten minutes previously, and the storm increasing so rapidly that at the time of starting the engineer could not see further than ten rods ahead; that about three miles east from Pittsfield, on a steep up-grade, the train, after having been stopped two or three times, during the previous mile, by the snow, which was heavy and damp and which froze to the rails, became stalled, so that it could not be moved either forwards or backwards; and that this occurred through no defect of the engine, which was in good order and capable of drawing thirty or forty loaded cars on a level road.

The engineer testified " that it was necessary to divide the train, and four cars, one of them containing the apples, were first carried up to Dalton and left on a side track, and the engine was taken back to the last half of the train, which was then drawn up to the top of the grade at Hinsdale, four miles east of Dalton, and then to its destination; that there was not time to take the

first half of the train to Hinsdale and return for the other half, because a passenger train would be due at the place where the train was stalled ; and that it was not probable that the engine would have been able to back down the grade from Hinsdale without being thrown from the track ; that it would have been impossible to draw the whole train, or any larger part than was actually drawn from Dalton to Hinsdale, because of the snow · that it would not have been safe to try to switch at Dalton in order to leave the last half of the train and take the first half or any part of the first half, because of the danger of getting off the track by reason of the snow freezing on the rails as it fell · that the difficulty in getting forward arose from the freezing to the rails, and not from the depth of snow; and that if the circumstances were to occur again he would not know of any better means than were then adopted for getting the train forward."

" He was corroborated in his account of the storm and the obstruction and management of the train, by the conductor and the fireman. The conductor testified that he knew there were apples in the New York Central Railroad car which was left at Dalton, because he found it open at Pittsfield and shut it ; that he did not know the contents of any other car in the train, because all were sealed and locked, and he had no means of knowing. He further stated that it would have taken three hours to walk back to Pittsfield and get an engine fired up and out to the place where the train was stalled.

" There was evidence in the case which the plaintiffs claimed tended to show that the train might have been driven back to Pittsfield, and have started again with additional power, and that it need not have been divided ; that, if necessarily divided, the car containing the apples might have been taken through that night, though other cars were left behind ; and that there was nothing in the state of the elements which would justify any delay of any part of the train."

The defendants asked the judge to instruct the jury " that, the cars on the train being sealed, and the conductor having no means of knowing, and not knowing, what they contained, there

was no reason for taking the car containing the apples rather than other cars; that there was a liability on the corporation to transmit the goods in the other cars with such speed as they could make; that the defendants were not under any obligation to furnish any extraordinary motive power in anticipation of a special emergency; and that, the plaintiffs having asked the defendants to take the car-load of apples on that train, the defendants had a right to push that train on according to the best judgment of competent managers of the train."

The judge declined to give any of these instructions; and instructed the jury as follows: " It was agreed on the evidence that the car should start on the train of the 7th. The defendants were bound to use all reasonable means to get this car through at the time arranged for it; and if damage occurred by failure so to do, they would be responsible. They were to do this by furnishing suitable men to carry on the necessary work, and suitable motive power; were obliged to provide against all emergencies that can be fairly calculated upon; and were not obliged to provide against any such as could not be fairly calculated upon. If they had sufficient notice of the storm to have enabled them to provide power and means sufficient to overcome the obstructions, and failed to use reasonable effort to do so; or if their servants failed to use such effort, skill and judgment, in attempting to get this car through, as were reasonable · and delay was occasioned by want of sufficient means which should have been provided, or the want of such skill as should have been used, and the freezing was occasioned by delay caused thereby; they are liable for the injury. While the conductor should have used every reasonable effort for all freight, yet, if it was known to him that some of the freight was liable to freezing, and if he could only take a portion of the train, and he was so situated that he could carry that portion of the train he chose, he was bound, in the exercise of a reasonable judgment, to select that to carry which contained goods liable to injury by freezing, rather than that of which in this respect he knew nothing." The jury found for the plaintiffs, and the defendants alleged exceptions, which were argued at September term 1870.

*A. L. Soule,* for the defendants.

*M. P. Knowlton,* ( *G. M. Stearns* with him,) for the plaintiffs.

CHAPMAN, C. J.　The jury were instructed that, while the conductor should have used every reasonable effort for all freight, yet, if it was known to him that some of the freight was liable to freezing, and if he could only take a portion of the train, and he was so situated that he could carry that portion of the train he chose, he was bound, in the exercise of a reasonable judgment, to select that to carry which contained goods liable to injury by freezing, rather than that of which, in this respect, he knew nothing.

We think the court cannot say that the conductor, or the railroad company as his principal, was under any such obligation as is stated in this instruction.　There is nothing that expresses or implies it in the contract made by the company at Albany. They agreed to take the car containing the plaintiffs' apples, and make it a part of their freight train which was then about to start for Springfield, (it being Saturday afternoon,) and would be due at West Springfield at midnight.　It is not contended that the defendants warranted the arrival of the train at any particular time; or that they were bound to use more than reasonable care and diligence to take the train through in the usual time of its running, or as soon thereafter as they reasonably could.　Nor is it contended that they expressly agreed to do anything to prevent the apples from freezing.　At that season of the year (December 7) such property would be exposed to some risk of freezing if there should be a change of weather and any unusual detention of the train.　But it is not contended that this was the risk of the carrier if he was guilty of no negligence.

A carrier is in most respects an insurer; but he is not such in respect to what is called the *vis major,* or act of God.　For example, he does not insure against damage by storm or lightning, or the perils of the sea.　The same principle has been held to apply to delays in transportation caused by the freezing of canals or rivers.　*Parsons* v. *Hardy,* 14 Wend. 215.　*Bowman* v. *Teale,* 23 Wend. 306.　*Harris* v. *Rand,* 4 N. H. 259.　2 Redfield on Rail-

ways, (3d ed.) 163, 164, and cases cited. Nothing is required of him in respect to such risks but the use of due care. If the owner of goods, which are liable to be injured by freezing, chooses to send them at a season of the year when they are exposed to such a risk, he takes the risk himself.

The conductor was bound to assume that it was important to each owner of freight that his property should be carried through with all reasonable care and speed, as the company had undertaken to do and had directed him to do; and he could not know that the speedy delivery of the contents of the other cars was not more important than that of the apples. But if any of the freightowners had desired to impose upon the company a special and peculiar obligation in respect to forwarding their particular freight, they might have stipulated for it. In the absence of such stipulation the obligations of the carriers were alike to each of them. *Exceptions sustained.*