# Wheeling,

## McGRAW v. B. & O. R. R. Co.

### Decided October 22, 1881.

18  361
44  539

18  361
47  663

18  361
54  568

1. A common carrier at common law is liable for the loss or damage to goods received for transportation from whatever cause arising, except the act of God, the public enemy or the conduct of the owner of the goods, unless such loss or damage arises from the nature and inherent character of the property carried, provided he has used foresight, diligence, and care to avoid such damage and loss.

2. When a common carrier undertakes to convey goods, the law implies a contract, that they shall be carried and delivered at the place of destination safely and within a reasonable time.

3. Freezing weather causing a loss of goods cannot be deemed the act of God, and does not come within the definitions given of that term.

4. But if the goods transported are frozen, it comes within the exceptions to that principle, and exempts the carrier from liability, provided he has been guilty of no previous negligence and misconduct, by which such loss or damage may have been occasioned.

5. The previous misconduct or negligence, which makes the carrier liable in such case, must be immediately or proximately connected with the loss.

6. What is "reasonable time," within which goods are to be delivered, cannot be defined by any general rule, but must depend upon the circumstances of each particular case.

7. The mode of conveyance, the distance, the nature of the goods, the season of the year, the character of the weather, and the ordinary facilities of transportation are matters properly entering into the consideration of what is reasonable time.

8. B. in Parkersburg delivered potatoes at the B. & O. R. R. Co.'s depot to be conveyed to McG. in Grafton on the 13th day of February, 1866, to be shipped on the 14th; there was a daily train between those points ; the weather was mild and so continued on the 14th ; the potatoes did not reach Grafton until the 16th, and arrived so frozen as to be worthless, the weather on the 15th and 16th having become cold.  HELD :

Under the circumstances of this case the company is liable in damages.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Taylor rendered on the 12th day of September, 1877, in an action in said court then pending, wherein Thomas McGraw was plaintiff and the Baltimore and Ohio Railroad Company was defendant, allowed upon the petition of said defendant.

46

Hon. C. S. Lewis, late judge of the second judicial circuit, rendered the judgment complained of.

The facts of the case are fully stated in the opinion of the court.

*C. Boggess,* for plaintiff in error relied upon the following authorities: 68 Pa. St. 302; 35 Ind. 39; 46 Miss. 458; 10 Wall. 176; 20 Pa. St. 171; 13 Gray 481.

*James Morrow, Jr.,* for defendant in error cited the following authorities: 7 W. Va. 54; 1 W. Va. 237; 7 W. Va. 171; 11 W. Va. 104; 6 Gratt. 189; 6 How. 344, 381; 5 Strobh. 119, 124; 1 Smith Lead. Cas. (5th Am. ed.) 318; 1 Conn. 487; 5 W. Va. 293; 3 Munf. 239.

PATTON, JUDGE, announced the opinion of the court:

This was an action at law brought in the circuit court of Taylor county by Thomas McGraw against the Baltimore and Ohio Railroad Company, to recover the value of fifteen barrels of potatoes shipped by J. G. Blackford, of Parkersburg, to the plaintiff at Grafton, which were so frozen, when they reached Grafton, as to be worthless, when the plaintiff refused to receive them. The action was commenced on the 28th day of June, 1868, and the cause was tried on the 11th day of September, 1877, when there was judgment for the plaintiff for the sum of $114.07 entered upon a demurrer to the evidence by the defendant, The Baltimore and Ohio Railroad Company. The company obtained a writ of error and *supersedeas* to this Court.

By the evidence it appears, that on the 10th day of February, 1866, Thomas McGraw by letter ordered from J. G. Blackford, at Parkersburg, some potatoes to be sent to him at Grafton; that the distance from Parkersburg to Grafton was one hundred and four miles; that there was a daily wayfreight train between those points leaving Parkersburg at about four o'clock A. M. and arriving at Grafton about four o'clock P. M. or according to the testimony of one witness leaving Parkersburg from six to nine A. M.; according to another witness the custom and usage of the company at Parkersburg was to receive no goods for shipment on the fol-

lowing day after three o'clock P. M.; the goods received prior to three o'clock P. M. one day it was understood were to be transported as early the next day as practicable.

J. R. Murdoch testified, that he was in the employ of J. G. Blackford, and as directed by the said Blackford he shipped to Thomas McGraw at Grafton fifteen barrels of potatoes on the 14th day of February, 1866, " fifteen barrels were shipped from Parkersburg to the said McGraw on the 14th of February," having been delivered to the Baltimore and Ohio Railroad Company, and the said company having receipted to the said Blackford for them; the said potatoes were shipped in good order, the weather at the time being safe and sufficiently warm to make the shipment prudent; the weather during the month of February was quite changeable, but at the time of the shipment was just as stated, warm and safe; the weather was changeable, so much so as one day to be quite warm and next very frosty and freezing, and it may have grown colder the day following the delivery of this; I am not positive."

It also appears by the evidence, that the 15th and 16th of February were cold, freezing days; the potatoes were received at Grafton on the evening of the 16th of February so frozen as to be worthless. The dispatcher of trains testified, that the day before they reached Grafton, whether in the evening or morning he could not remember, McGraw came and enquired for the potatoes; that trains arrived on time on the 15th and 16th of February. An engineer of a freight train testified, that there was no train from Parkersburg to Grafton on the 13th or 14th of February; that at the instance of the agent at Grafton he looked at the register and found there was no train one of those days, but could not remember which day it was, the 13th or 14th, it might possibly have been the 15th.

Under these facts and upon the demurrer to the evidence, was the Baltimore and Ohio Railroad Company liable for the loss of these potatoes? The liability of a common carrier at common law for the loss of or damage to goods received for carriage, from whatever cause arising, except the act of God or the public enemy, or the conduct of the owner of the goods, is settled, unless that loss or damage arises from the nature and inherent character of the property carried, such as the natural decay of perishable articles or the fermentation or

evaporation of articles liable to these effects, or the natural and necessary wear of certain articles, or from defects in the vessels or packages in which they were put, or in the case of live stock where the loss arises from their own vitality, or where vicious and unruly animals injure or destroy themselves or each other, or starve themselves by refusing food or die of fright or heat, provided the common carrier has used foresight, diligence and care to avoid such damage and loss. *Smith* v. *New Haven & Northampton Railroad Co.*, 12 Allen 533; *Clark* v. *Rochester & Syracuse Railroad Co.*, 14 N. Y. (4 Kernan) 571; *Cragin* v. *New York Central Railroad Co.*, 51 N. Y. 61; *Conger* v. *Hudson River Railroad Co.*, 6 Duer. 375; *Hall & Co.* v. *Renfro*, 3 Metc. (Ky.) 53; *Maslin* v. *B. & O. R. R. Co.*, 14 W. Va. 180; *Friend, &c.*, v. *Woods*, 6 Gratt. 189.

In the absence of a special contract it is the duty of the carrier of goods to transport them by the usual route proposed by him to the public and to deliver them within a reasonable time. When a carrier undertakes to convey goods, the law implies a contract, that they shall be carried and delivered at the place of destination safely and within a reasonable time. *The Empire Transportation Co.* v. *Wallace*, 302; *Vicksburg & Meridian R. R. Co.* v. *Ragsdale*, 458; *Denny* v. *New York Central R. R. Co.*, 15 Gray 481.

It is claimed by the counsel for plaintiff in error, that the loss of the property in this case was occasioned by the act of God, and that the company is not liable. It has been determined, that "such an accident as could not happen by the intervention of man, as storms, lightning and tempests," (Lord Mansfield in *Forward* v. *Pittard*, 1 T. R. 27) "those losses that are occasioned by the violence of nature by that kind of force of the elements, which human ability could not have foreseen or prevented, such as lightning, tornadoes, sudden squalls of wind," (*Friend* v. *Wood*, 6 Gratt. 195) "an extraordinary convulsion of nature" (*Id.* 196) ; "a direct visitation of the elements, against which the aids of science and skill are of no avail" (*Id.* 196) ; "physical causes which are irresistible, which human foresight and prudence cannot anticipate, nor human skill and diligence prevent, such as loss by lightning, storms, inundations and earthquakes and the unknown dangers to navigation, which are suddenly produced by their vio-

lence" (*McCall* v. *Brock*, 5 Strobh. 119), are the acts of God or inevitable accidents. It seems to me, that freezing weather coming especially in that season of the year, when such weather may be expected, cannot be brought within the definitions above given of the act of God or inevitable accidents, which are in conformity with the definitions universally given of those phrases. *O'Conner* v. *Foster*, 10 Wall. 418; *Cooper* v. *Young*, 22 Ga. 272; Sedgewick on Damages 357.

In the case of *O'Conner* v. *Foster* the defendant was sued for failure to transport grain from Pittsburgh to Philadelphia according to contract. The transportation was prevented by the freezing of the canal. The defendant was held liable to damages. The only question discussed was as to the measure of damages. It was not pretended that the freezing of the canal presented any excuse. Sergeant, judge, in delivering the opinion of the court, says: "The defendants were bound by their contract to transport the wheat from Pittsburgh to Philadelphia, and have shown no legal excuse for refusing to do so. The question is, what is the measure of damages to be paid by a carrier for violating such a contract."

If the question in this case depended solely on the question, whether the plaintiff in error was liable for the loss of the property from freezing, because that was an act of God, I should have no hesitation in saying that the liability existed. But on the other hand, if the question of liability rested simply upon the question, whether they were liable for the freezing of the property, having been guilty of no negligence or misconduct, by which that injury resulted, I would have as little *hesitation in saying, that they were not liable;* not because the freezing was an act of God or an inevitable accident, but because of the exception to that principle on account of the nature and inherent character of the property and its liability to freeze. *Maslin* v. *B. & O. R. R. Co.*, 14 W. Va. 189. But whenever the common carrier is exempt from liability, either because of the act of God or because of the nature and inherent character of the property and its liability to loss and damage, he must be free from any previous negligence and misconduct, by which that loss or damage may have been occasioned. For though the immediate or proximate cause of a loss in any given instance may have been what is termed the

act of God, or from the nature and inherent character of the property, yet if the carrier unnecessarily exposed the property to such accident by any culpable act or omission of his own, he is not excused. *Williams et als., v. Grant et als.*, 16 Conn. 487.

That previous negligence or misconduct, which makes the carrier liable for loss to property, must be immediately or proximately connected with the accident or loss. If it is remotely the occasion of the loss or damage, the carrier is not liable. He is answerable for the ordinary and proximate consequences of his negligence, and not for those that are remote and extraordinary, and this liability includes all those consequences, which may have arisen from the neglect to make provision for those dangers, which ordinary skill and foresight is bound to anticipate. *Morrison* v. *Davis & Co.*, 20 Pa. St. 171; *Denny* v. *New York Central R. R. Co.*, 13 Gray 481; *Railroad Company* v. *Reeves*, 10 Wall. 176.

In the case of *Morrison* v. *Davis & Company* the goods were injured by a flood. The evidence showed, that the canal boat, by which the goods were transported, was drawn by a lame horse. The result was that the boat did not make its usual speed. If it had, it would have passed the point, where the goods were injured, before the flood. It was held, that the carrier was not liable, because the lameness of the horse was the remote and not the proximate cause of the injury.

In *Denny* v. *New York Central R. R. Co.*, the goods were unnecessarily delayed on the way for six days at an intermediate point, and were then carried to their destination and placed in the depot of the company. It was held, that the company was liable for any injury resulting from the delay in transportation, but that it was not liable for the injury done by a flood after the goods were placed in the depot; that the delay was merely the remote cause of the injury by the flood.

On the other hand, in the case of *Smead* v. *Foord*, 1 El. & El. 602, the delay was in the delivery of a threshing machine with the knowledge on the part of the company, that it was needed to thresh wheat in the field. The grain was injured by rain, and during the delay had fallen in value. It was held, that the carrier was liable for the injury to the grain, but not for the fall in value.

The obligation of the common carrier is to transport the goods safely and within a reasonable time. What is a reasonable time is not susceptible of being defined by any general rule; but the circumstances of each particular case must be adverted to in order to determine, what is a reasonable time in that case. But it may be said, that the mode of conveyance, the distance, the nature of the goods, the season of the year, the character of the weather, and the ordinary facilities of transportation are to be considered in determining, whether in the particular case there has been an unreasonable delay. *Vicksburg & Meridian R. R. Co.* v. *Ragsdale,* 46 Miss. 458. It is obvious, that ordinarily the delay in shipping articles not liable to decay or damage, such as iron, wool, cotton, grain and things of like character not liable to be injured by a few days delay, would be no test in a case where the delay of a day in transportation would result in loss or damage by reason of their nature and inherent character, such as live-stock, fish, oysters, fruits, vegetables and things of like character. In the one case there is nothing in the thing itself, which would induce a prudent business man to anticipate injury from a temporary delay in transportation, whereas in the other case any prudent business man from the nature of the thing itself might reasonably anticipate loss or damage from delay. So the season of the year is an element to be considered, some articles, as some kinds of vegetables, being of that nature that at certain seasons of the year a brief delay would be harmless, whereas at another season of the year the delay would result in loss or damage.

The evidence in this case leaves it doubtful, whether the potatoes were delivered at the depot of the company on the 13th to be carried on the 14th, or whether they were delivered on the 14th to be carried on the 15th. The witness Murdock says in his testimony, that he "shipped to Thomas McGraw at Grafton fifteen barrels of potatoes on the 14th of February, 1866;" again he says, "fifteen barrels were shipped from Parkersburg to the said McGraw on the 14th of February, *having been* delivered to the Baltimore and Ohio Railroad Company and the said company having receipted to the said Blackford for them." What Mr. Murdock means by "shipped," whether they left Parkersburg on the cars that day, or

were delivered at the depot the preceding day previous to
three o'clock P. M., to be transported the next day, or whether
he meant they were delivered at the depot that day to be
shipped the next, there is nothing to show. The despatcher
of trains states, that McGraw inquired for the potatoes on the
15th, but whether in the morning or evening he cannot re-
member. If in the morning, it was because he anticipated
their shipment on the preceding day; for if they were shipped
on that day, they could not arrive until nearly night. An
engineer of the company stated, that there was no freight train
on the 13th or the 14th, but which one of those days, he could
not remember; that at the instance of the agent at Grafton he
examined the register and found, that on one of those days
there was no train, but could not remember which. "It might
possibly have been the 15th." This tends in some measure
to confirm the idea, that the property should have been re-
ceived at Grafton on the 14th, as it was an effort to account
for the non-delivery on that day. It was not the 15th, be-
cause the testimony shows, that the train arrived on time on
both the 15th and 16th. McGraw says: "I ordered of J. G.
Blackford, of Parkersburg, some potatoes to be shipped to me
from Parkersburg to Grafton on the B. & O. R. R. I re-
ceived the bill soon after dated the 14th of February for fifteen
barrels of potatoes at $4.25 per barrel, aggregating $63.75. I
went to the depot at Grafton on the 15th, and enquired for
the potatoes of John Flanagan, the despatcher of trains, and
learned that they had not been received at the depot."

Whatever may be the true state of the facts as to the time,
when this property was delivered to the company, and what-
ever construction would be placed upon the testimony as an
original proposition, makes no difference upon the demurrer
to the evidence. The sole question in that regard is not what
is the fact, but what inference from the facts might a jury
fairly draw. It seems to me, the jury could fairly draw the
inference from the facts, that the property was delivered to
the company on the 13th in time for transportation on the 14th.
Treating this then as the true state of the facts, there seems to
be no reason whatever given, why this property was not
shipped to its destination on the 14th of February, unless
there was no train on that day, which may be inferred from

the testimony.   That would account for the failure, but would
not excuse the company.   If the potatoes had been carried on
the 14th, they would have reached Grafton in proper condi-
tion, the 13th and 14th of February having been "warm and
safe."

Was the company then liable for not delivering this prop-
erty on that day?   Taking the nature of the property into
consideration, its liability to be injured by freezing weather,
the distance from the point of shipment to the place of des-
tination, the daily trains between those points, the favorable
condition of the weather when the property was delivered, its
liability to change at that season of the year, and the fact that
at that particular time it was very changeable, I do not think,
that that care and diligence and foresight were exercised,
which is incumbent upon the common carrier.   Under the
circumstances the company is liable for the loss of the prop-
erty, the delay being the immediate and proximate cause of
the loss.

The declaration in the court below was demurred to.   The
ground of demurrer assigned by counsel is, that the defendant
is declared against not upon any special contract, but as a com-
mon carrier, and the cause of the loss alleged was the act of
God.   Having alleged an act of God, "freezing," the aver-
ments of the declaration should have shown, that by ordinary
care the loss could have been prevented.   In the first place, as
has been shown, the cause of the loss was not an act of God,
but resulted from the negligence of the company in not ship-
ping the property with due despatch under the circumstances
of the case.   The declaration avers, "the said defendant being
such carrier as aforesaid then and there, to wit, at the county
aforesaid, undertook and faithfully promised the plaintiff to
take care of the said goods and chattels and safely and securely
to carry and convey the same in and by its cars aforesaid
from Parkersburg to Grafton aforesaid, and there, to wit, at
Grafton aforesaid, to safely and securely deliver the same for
the plaintiff  *  *  *  *  *; but on the contrary thereof,
the said defendant being such carrier as aforesaid, so careless-
ly and negligently behaved and conducted itself in respect to
the goods and chattels aforesaid, that by means of the said
carelessness, negligence and improper conduct of the said de-

fendant the said goods and chattels of the value aforesaid afterwards, to wit, on the day and year aforesaid, at the county aforesaid, became and were frozen, destroyed and wholly lost to the said plaintiff, and were never delivered to the plaintiff at Grafton aforesaid or elsewhere."

I think the declaration is sufficient in law, and that the demurrer was properly overruled in the court below.

I am of opinion to affirm the judgment of the court below, with costs and damages according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.