W. H. BLODGET COMPANY *vs.* NEW YORK CENTRAL RAILROAD COMPANY.

Worcester. September 27, 1927. — November 23, 1927.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Carrier,* Of goods: interstate commerce, freezing in transit.

Neither at common law nor by reason of the provisions of the Federal statutes is a railroad corporation, transporting celery in a refrigerating car between Rochester in the State of New York and Worcester in this Commonwealth in the middle of December, required to furnish heat in the car; and if the shipper fails to furnish such heat and the shipment is damaged by freezing without negligence on the part of the carrier, the carrier is not liable.

CONTRACT OR TORT for damage to celery frozen while being transported by the defendant, an interstate carrier. Writ dated February 21, 1927.

In the Superior Court, the action was heard by *Broadhurst,* J., without a jury, upon an agreed statement of facts. Material facts are stated in the opinion. The judge, without rendering a decision, reported the action to this court for determination.

*L. E. Stockwell,* for the plaintiff.

*W. L. Parsons,* for the defendant.

CROSBY, J. This is an action by the consignee of a shipment of celery, to recover damages arising from its injury by freezing while in transit between Rochester, New York, and Worcester in this Commonwealth. The case is before us on a report by a judge of the Superior Court with an agreed statement as to all the material facts.

A. J. Warren and Son, of Rochester, having sold the celery to the plaintiff, on December 17, 1924, requested the defendant to place an empty refrigerator car on the siding near the plant of the Rochester Cold Storage and Ice Company, where the celery was in cold storage. The car was so placed the same day. The next day the storage company loaded it, closed and sealed the doors, and, as agent for the shippers, consigned the celery to the plaintiff at Worcester, over the defendant's railroad. At that time the celery was in good, marketable condition. The shippers' agent then presented to the defendant a bill of lading covering the shipment, which was signed by an agent of the latter and returned to the shippers. The car left Rochester for Worcester, a distance of three hundred and seventy-six miles, on December 19, and arrived in Worcester at 3:10 in the morning of December 21. On delivery to the plaintiff, a portion of the celery was found damaged by freezing, which occurred during transportation by the defendant as a common carrier.

It is agreed that the defendant charged and received for the transportation of the freight the carload rate for celery as prescribed by the carriers' established schedules or tariffs of rates duly published and filed with the interstate commerce commission as required by the interstate commerce act; and that the shipment moved in the usual course and with reasonable despatch. The car was a standard refrigerator car and was in good condition in all respects while the celery was contained in it. Cars of this type are used in cold weather "because the heavy insulation tends to exclude the cold which may be encountered during the transit and are the best known railroad vehicles for that purpose. They may be artificially heated before or during the loading or during transit by portable stoves or heaters placed tempo-

rarily in the bunkers, but the car which carried this shipment of celery was not heated . . . by stoves or otherwise, either before or during the loading or during the transit."

The bill of lading is in the standard form of uniform straight bill of lading, approved by the interstate commerce commission and prescribed by the duly published schedule of rates filed with the commission as required by the act. Under it the defendant acknowledges receipt of the merchandise "subject to the classifications and tariffs in effect on the date of the issue of this Original Bill of Lading."

The bill of lading also provides as follows: "It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions not prohibited by law, whether printed or written, herein contained, including the conditions on back hereof, which are hereby agreed to by the shipper and accepted for himself and his assigns." Among the conditions on the back of the bill of lading are the following: "Sec. 1. (a) The carrier or party in possession of any of the property herein described shall be liable as at common law for any loss thereof or damage thereto, except as hereinafter provided. (b) No carrier or party in possession of all or any of the property herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, the authority of law, or the act or default of the shipper or owner, or for natural shrinkage. . . . Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage, or delay occurring while the property is stopped and held in transit upon the request of the shipper, owner, or party, entitled to make such request, or resulting from a defect or vice in the property, or for country damage to cotton, or from riots or strikes. . . . Sec. 2 (a) No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable

dispatch." The classification containing the carriers' schedule of rates, fares and charges, in force at the time the shipment in question was made and applicable thereto, contains the following and other provisions: "Rule 31. . . . Section 2. Ratings provided for freight in carloads do not obligate the carrier to furnish heated cars, nor to maintain heat in cars, for freight requiring such protection, except under conditions which the carriers' tariffs provide. . . . Rule 33. Stoves, used in cars, and the fittings and fuel therefor must be furnished by shipper and the fuel must consist of coal, coke, or charcoal, unless otherwise permitted by regulations of individual carriers. . . . Shippers must provide men to care for fires. With shipments of fresh fruit or fresh or green vegetables one man to care for fire will be carried free in charge of one or more cars; no free return passage to be given. With shipments of perishable property other than fresh fruit or fresh or green vegetables man or men in charge to pay full fare. No charge will be made for the transportation of stoves, fittings or fuel in the car with the freight requiring such protection." It is agreed that there is no tariff applicable to the defendant or to any other railroad company which provides for the furnishing by the carrier of artificial heat for the protection of perishable merchandise against freezing in the territory through which this shipment moved or in the eastern states generally, nor is it the practice of carriers to furnish or maintain such heat.

The first question is whether the defendant is liable at common law for the injury arising while the celery was in transit. A common carrier generally is practically an insurer of goods in its possession. This rule, however, is subject to certain well recognized exceptions. A carrier is not liable for loss or damage arising from an act of God, from the public enemy, nor for the destruction of goods or injury due to their inherent nature, if the negligence of the carrier did not occasion or contribute to the injury. It has been held that where perishable goods such as fruit and vegetables are injured or destroyed in transit, the carrier is not liable if its own negligence did not cause the injury. It was said in *Swetland* v. *Boston & Albany Railroad*, 102 Mass. 276, at

page 283: "If the owner of goods, which are liable to be injured by freezing, chooses to send them at a season of the year when they are exposed to such risks, he takes the risk himself." A carrier, in the absence of an agreement to do so, is not bound to heat cars to protect perishable goods from freezing. *McGovern* v. *Ann Arbor Railroad,* 165 Wis. 525. *McGraw* v. *Baltimore & Ohio Railroad,* 18 W. Va. 361. *Cassone* v. *New York, New Haven & Hartford Railroad,* 100 Conn. 262. *Ross* v. *Maine Central Railroad,* 112 Maine, 63. *Schwartz & Co.* v. *Erie Railroad,* 128 Ky. 22. *Vail* v. *Pacific Railroad,* 63 Mo. 230. *Standard Pickle Co.* v. *Pere Marquette Railway,* 222 Mich. 639. *White* v. *Minneapolis & Rainy River Railway,* 111 Minn. 167. *Atlantic Fruit Co.* v. *Pennsylvania Railroad,* 149 Md. 1. *Leypoldt & Pennington Co.* v. *Davis,* 112 Neb. 350.

In the case at bar the goods were shipped about the middle of December, a time in this climate when freezing weather is not unusual, but might reasonably be expected. There is nothing in this record to show that the cause of injury to the shipment was so unexpected, unusual or extraordinary as to be said to have arisen from an act of God. Such weather is an event which, according to common experience, naturally might be expected. The case cannot be distinguished in principle from *Swetland* v. *Boston & Albany Railroad, supra,* and is governed by it.

It is manifest that at common law the defendant cannot be charged with liability merely because heat was not furnished to protect the celery. Cases cited by the plaintiff where carriers are held liable show that the injuries were due to negligence by reason of delay in shipping, furnishing an improper car, exposing the goods to cold weather or to the breach of a special contract for transportation. *Fox* v. *Boston & Maine Railroad,* 148 Mass. 220. *Hewett* v. *Chicago, Burlington & Quincy Railway,* 63 Iowa, 611. *McGraw* v. *Baltimore & Ohio Railroad, supra. Johnson* v. *New York, New Haven & Hartford Railroad,* 111 Maine, 263, 270.

This was a shipment in interstate commerce and was received for transportation subject to such classification and tariffs. Thereunder the carrier was not required to

furnish heat, but the shippers might do so.    The rates were published under the requirements of the interstate commerce act and are binding upon all parties engaged in interstate transportation.    The shipment was made under the standard bill of lading issued by the defendant in conformity with the Cummins amendment to the interstate commerce act.    U. S. St. 1915, c. 176; 38 U. S. Sts. at Large, 1196. The rights and liabilities of the parties are governed by the Acts of Congress, the bill of lading, and the tariffs duly filed with the interstate commerce commission.    In this connection it was said in *New York Central & Hudson River Railroad* v. *York & Whitney Co.* 230 Mass. 206, at page 213: "They have the force of a statute.    They cannot be varied under any pretext.    The carrier cannot lawfully depart from them."    The shipper and consignee knew or were charged with knowledge of these provisions.    *New York Central & Hudson River Railroad* v. *Beaham,* 242 U. S. 148.    *Western Transit Co.* v. *A. C. Leslie & Co. Ltd.* 242 U. S. 448, 454.

It is not contended that the tariff provisions respecting the furnishing of artificial heat in cars are not valid.    In *Boston & Maine Railroad* v. *Piper,* 246 U. S. 439, it was said, at page 443, that "Interstate shipments of the character here in controversy made upon bills of lading, and under tariffs filed with the Interstate Commerce Commission, have been the subject of frequent consideration in this court. The binding character of the stipulations of the bill of lading, and of the rates as fixed in the filed tariffs, have been recognized and enforced."    As the refrigerator car furnished by the defendant was in good condition in all respects when the shipment was made, and as there was no additional charge for heat but only the regular carload rate prescribed by the tariff was paid, and as the car moved over the defendant's lines in the usual course and with reasonable despatch, it is plain that the defendant did not fail in any duty it owed to the plaintiff unless it was bound to heat the car.    We are of opinion that no such obligation rested upon the carrier. There was nothing in the tariff to that effect; and the provisions in the classification, in force and applicable to the carload rate under which the shipment was made and which the

plaintiff paid, "do not obligate the carrier to furnish heated cars, nor to maintain heat in cars, for freight requiring such protection, except under conditions which the carriers' tariffs provide."

Rule 33, above referred to, expressly states that stoves used in cars must be furnished by the shipper who must provide a man to care for the fires, and that he and the heating appliances will be carried without charge.

Not only was the defendant under no obligation to heat the car to protect the celery from freezing, but, under the provisions of the classifications and tariffs, it had no legal right to do so.   Under the interstate commerce act, § 6, par. 1 as amended (34 U. S. St. at Large, 586) it is provided in part that every common carrier shall file with the interstate commerce commission schedules of all rates and charges of transportation.   It is further provided in the same act, § 6, par. 7 as amended (34 U. S. St. at Large, 587) that "No carrier, unless otherwise provided by this Act, shall engage or participate in the transportation of passengers or property, as defined in this Act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this Act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."   The act as amended also provides: "The term 'transportation' as used in this Act shall include . . . all instrumentalities and facilities of shipment or carriage . . . and all services in connection with the receipt, delivery . . . and handling of property transported" (§ 1 (3), 41 U. S. St. at Large, 475).

In view of these provisions it is manifest that to furnish heat in cars would be to allow the shippers something which would affect the value of the service rendered without compensation therefor, and as there was no tariff or charge authorized for such service, the defendant was expressly forbidden by the act to furnish it. "An advantage accorded by special agreement which affects the value of the service to the shipper and its cost to the carrier should be published in the tariffs, and for a breach of such a contract, relief will be denied, because its allowance without such publication is a violation of the act. It is also illegal because it is an undue advantage in that it is not one open to all others in the same situation." *Chicago & Alton Railroad* v. *Kirby,* 225 U. S. 155, 165. See also *Chesapeake & Ohio Railway* v. *Westinghouse, Church, Kerr & Co. Inc.* 270 U. S. 260, 266.

If the defendant had heated the car it could not lawfully have made any charge therefor, and it would have given the defendant a preference not allowed to others which is prohibited by the act. *Metz Co.* v. *Boston & Maine Railroad,* 227 Mass. 307, 309. *Davis* v. *Cornwell,* 264 U. S. 560. *Dolan Fruit Co.* v. *Davis,* 111 Neb. 322, 324. *Fort* v. *Denver & Rio Grande Railroad,* 69 Col. 441.

The plaintiff was entitled under the tariff to heat the car if it chose to do so. As it did not avail itself of that privilege, it took the risk of injury to its goods by freezing, and for the reasons stated cannot charge the defendant with liability. The decisions of both the Federal and State courts are decisive against the contention of the plaintiff.

It results that judgment must be entered for the defendant.

*So ordered.*