694

AMERICAN WRITING INK CO., Inc. v.
NEW YORK, N. H. & H. R.

Civil Action No. 7173.

United States District Court
D. Massachusetts.

Nov. 3, 1948.

Cohen & Berkman and Sydney Berkman, all of Boston, Mass., for plaintiff.

Paul F. Perkins, of Boston, Mass., for defendant.

SWEENEY, Chief Judge.

In this action the plaintiff seeks to recover damages alleged to have been suffered by reason of the neglect of the defendant in transporting certain products to the West Coast.

Findings of Fact.

The plaintiff is a manufacturer of writing ink. On January 13, 1943, it shipped to the U. S. Naval Supply Depot at Oakland, California, approximately 55,000 bottles of ink in fluid form. Through a trucking concern, which was its own agent, the plaintiff delivered the ink to the defendant in Boston. The defendant was the initial carrier and, by virtue of 49 U.S.C.A. § 20(11), commonly called the Carmack Amendment, is liable for any neglect on its own part as well as neglect on the part of succeeding carriers.

The usual running time for such a shipment would be approximately twelve days. The shipment in question was delayed at several points by reason of war priorities, and it took twenty-five days to complete the trip from Boston to Oakland, California. When delivery of the ink was made to the defendant carrier, the plaintiff did not specify a particular type of car or whether or not it wanted the car heated. The railroad provides a heater service at a higher tariff than for the non-heater service. While the plaintiff says that it did not in fact know about the heater service at the time of this particular shipment, I find this hard to believe, as the plaintiff has been in this same business for a great many years and has shipped on a worldwide basis.

The defendant provided the ordinary box car and transported the car to Greenville, New Jersey, where it turned it over to another carrier. When the goods reached California on February 7 they were rejected by the consignee because a number of the cartons had burst as a result of the ink having frozen. The consignee later accepted some of the goods, and others which had been reconditioned. The plaintiff was out-of-pocket about $853.65 as a result of the freezing of the ink and its loss or reconditioning.

When the bill of lading was made out by the plaintiff, in addition to routine instructons there appeared on it the following:

"War Materials—Urgent, Rush—Do Not Delay"

"Keep on Most Southerly Route to Avoid Freezing"

The plaintiff alleges that the defendant was guilty of neglect in at least two instances: first, in failing to provide a heated car, and, second, by reason of the delay in transporting the shipment to its destination. Ink has a freezing point of about 28° F. It must be borne in mind that this shipment was made at the very height

of the war period when everyone was familiar with the priorities given to shipments of men, munitions, and war materials. While ink might be termed a necessary material for the conduct of the war and its resultant paper work, it could hardly be deemed a critical material. A reasonable person would then have anticipated that this shipment of ink was not going to go through on a pre-war schedule. Similarly, a reasonable man would have anticipated the likelihood of some freezing taking place in a product such as ink when shipped in the coldest month of the year. Since the railroad provided a heater service at a higher tariff, it stood ready and willing to accept a contract for such service, which would of course have made it an insurer for all intents and purposes. This plaintiff, either by reason of ignorance or neglect, did not choose to avail itself of this service. It took a chance that the weather would be so mild that no damage would result to its product. I cannot find that the delay or routing contributed in any way to the freezing of the ink; in fact, the ink may have been frozen, for all that the evidence shows, before it left Boston. In W. H. Blodget Company v. New York Central Railroad Company, 261 Mass. 365, 159 N.E. 45, 47, 55 A.L.R. 900, the Court, in approving Swetland v. Boston & Albany Railroad, 102 Mass. 276, said, " 'If the owner of goods, which are liable to be injured by freezing, chooses to send them at a season of the year when they are exposed to such a risk, he takes the risk himself.' A carrier, in the absence of an agreement to do so, is not bound to heat cars to protect perishable goods from freezing." In the same case, the Court pointed out that, not only was the defendant under no obligation to heat the car to protect the product from freezing, but that it had no legal right to do so, saying that since it had not collected the extra tariff for heating it could not provide the service without creating a preference for one client over another.

### Conclusions of Law.

From the foregoing I conclude and rule that the defendant railroad was not negligent in transporting the plaintiff's goods.

I also conclude and rule that the defendant was under no obligation to provide heat to prevent the ink from freezing since the shipper had not contracted for this service.

The action is therefore to be dismissed.