M. BRANDEIS, Appellee, v. CHICAGO, BURLINGTON & QUINCY RY. CO., Appellant.

rriers: LIABILITY FOR LOSS OF PROPERTY. While a carrier may be held absolutely liable for the loss of property in transit, through the embezzlement or negligence of its servants, this rule of insurance does not apply where the damage results from the inherent character or quality of the shipment, and the only fault of the carrier is delay in shipment or delivery.

Same:  PERISHABLE GOODS:  SUBMISSION OF ISSUE.  Where an action
for injury to a shipment of fruit was tried on the theory that
defendant was negligent in failing to place the car upon an un-
loading track within a reasonable time after its arrival at destina-
tion, and not upon the theory that defendant was liable for damage
as an insurer, the defendant could not complain of its submission on
the theory of negligence, on the ground that a carrier is not liable
as an insurer of goods of a perishable character.

Evidence:  EXCLUSION:  PREJUDICE.  The rejection of evidence is not
prejudicial error, where immediately afterward the witness without
objection testified to the matter previously inquired about.

*Appeal from Pottawattamie District Court.*—HON. A. B.
THORNELL, Judge.

TUESDAY, APRIL 14, 1914.

ACTION to recover damages for delay in shipment and
delivery of perishable freight. Judgment for the plaintiff.
Defendant appeals.—*Affirmed.*

*Wright & Baldwin,* for appellant.

*Kimball & Peterson,* for appellee.

PER CURIAM.—The plaintiff brings this action to recover
damages to a carload of apples shipped upon defendant's
railway from Savannah, Mo., to Omaha, Neb. Plaintiff claims
that on the 20th day of August, 1910, he shipped a carload of
apples to Omaha; that the apples arrived on the 22d day of
August; that the company notified consignees of the arrival
of the apples, and they were ready for unloading; that, when
they went to unload the apples from the car, they found it on
the tracks of defendant company at a point where it was
impossible to unload it, and not upon the team tracks pro-
vided for that purpose; that plaintiff attempted to get the
company to place the car on the team track so that it could
be unloaded; that this the defendant failed to do. The neg-

ligence charged, as a basis for recovery against the company, is "that the defendant failed to place the car upon the team track, for the purpose of unloading, within a reasonable time after its arrival in Omaha, and failed and neglected to place the same at the disposal of the plaintiff within a reasonable time after the car had reached Omaha," and that by reason of the failure of defendant, as claimed, and without any fault on the part of the plaintiff, the apples became heated, and that when plaintiff was able to get possession of the same they were in such a condition that plaintiff was unable to sell them. There are other allegations of neglect; but for the purpose of this case, as presented here, this is sufficient to make plain the errors relied on for reversal.

It is first contended by appellant that the record in this case does not justify a verdict for the plaintiff; that to hold the defendant liable, under the record here made, would be to declare that, under the law, a railroad company is an insurer of the delivery of perishable goods, in a sound condition, at the place of destination. Attention is called to the distinction between the liability of a carrier for the loss of goods carried by theft or otherwise, and the liability of a carrier for injury to or loss of goods resulting from delay in transportation or delivery. Thus it is claimed that, while, from reasons of public policy, a carrier may be held to absolute liability for loss of goods entrusted to its servants for transportation, through embezzlement or negligence, on the ground that the party so intrusting the goods has no means of protecting himself, yet this rule of insurance does not apply where the injury or damage to the goods results to them from the inherent character or quality of the goods, and when the only fault, to which injury is traceable, lies in delay in shipment or delivery. We think that this distinction is well recognized in the books and by the prior decisions of this court.

1. CARRIERS: liability for loss of property.

In *Kinnick Bros. v. C., R. I. & Pac. Ry. Co.*, 69 Iowa, 669, this court said, in substance, that when the cause of damage,

for which recompense is sought, is connected with the character or propensities of the thing undertaken to be carried, the ordinary responsibility of carriers does not attach; that is, the responsibility of insurers. This distinction is well exemplified in the opinion of the Supreme Court of the United States, rendered in the *Caledonia Case*, 157 U. S. 124 (15 Sup. Ct. 537, 39 L. Ed. 644).

This case, however, was not tried nor submitted upon the theory that the defendant was an insurer against injuries resulting to them by reason of their perishable character, and

2. SAME: perishable goods: submission of issues.

the jury were distinctly told by the court that, to make the defendant liable, the burden rested upon the plaintiff to show, and that to recover they must show, by a preponderance of the evidence, that the defendant was negligent, in not placing the car upon the track where it could be unloaded, so it could be unloaded, within a reasonable time after it had been received by the company at Omaha. The liability of the defendant was predicated upon the suggested duty of the railroad company to use ordinary diligence, ordinary care; not only in transporting the apples to Omaha, but in delivering the same to the consignee within a reasonable time after they had been received by the company, and the jury were told that the company was only required to use that care and precaution, in so doing, as is required of ordinarily prudent and cautious persons in respect to the same matters; that the care required of the defendant was commensurate with the known injuries likely to result from the want of care, and they were distinctly instructed that the company was bound to use only reasonable care to furnish reasonable facilities for delivery, and not extraordinary care, and they were told that if, at any time, there happens to be a congestion of business that could not be anticipated in the usual and ordinary course of business, it cannot be regarded as negligence, or lacking in ordinary care, in not providing for immediate handling of such extraordinary rushes of business; that they were bound to furnish

reasonable, and only reasonable, facilities for unloading. Indeed, the entire instructions, which are long and were delivered by the court orally, proceed upon the theory that there can be no liability in this case unless it is shown affirmatively that the defendant failed to exercise reasonable care in providing reasonable facilities for the delivery and in the delivery of these goods to the consignee, within a reasonable time, and that damages resulted by reason of such failure. We have examined this record with some care, and, while there is a sharp conflict in the evidence, there is sufficient as a basis for the verdict that was rendered here, and we find no error in the manner in which the case was submitted to the jury.

It is complained, however, that the defendant was entitled to show that the company had the necessary means and facilities in its yards and sufficient team tracks for handling the amount of freight that ordinarily arrived in the city of Omaha, on the date it is claimed that this car arrived, and to that end the following questions were asked one of the defendant's witnesses: ''What are the facts as to whether or not, on August 22, 1910, the company had the necessary means and facilities in its yards and team tracks for handling the amount of freight that ordinarily arrives in the city of Omaha?'' And whether or not, on the 22d day of August, everything was done to expedite the handling of cars on these team tracks.

3. EVIDENCE: exclusion: prejudice.

These questions were objected to on the ground of incompetency and immateriality and as calling for the conclusion of the witness, and the objection was sustained. We are inclined to think that the objection was well taken, but, however this may be, no error can be predicated on the ruling for the reason that immediately afterwards the same witness said, without objection: ''Well, there was not room to handle the ordinary business promptly during August, I think. I don't know how long, for quite a while, and during the rush of freight. On the 22d of August, everything was done that was possible to relieve the congestion, and as fast as cars were

emptied they were pulled out and loads set in. Every day that I was there, these tracks were full. I don't remember how long it was that way. I know that some of the cars stood there for ten days and longer. We allow the cars to stand there until the people unload them. If there were empty cars, I was instructed to notify the switching crew and when they were emptied. I don't know whether there was any empty cars on that track, any emptied cars on that day or not.''

We find no error in the record, and the cause is—*Affirmed.*

LADD, C. J., and DEEMER, GAYNOR, and WITHROW, JJ., concurring.