FARR v. ST. LOUIS SOUTHWESTERN RAILWAY COMPANY.

Opinion delivered July 10, 1922.

1. RAILROADS—PROCESS NOT CHANGED BY FEDERAL CONTROL.—The Director General of Railroads, upon being served with process as agent in control of a connecting carrier doing business in Arkansas, is not in court as representative of the delivering carrier, a Texas corporation bearing the same name; the provisions of general orders Nos. 18, 18a, and 50, issued under the Federal Control Act (U. S. Comp. Stat. Supp. §§ 3115¾-3115¾p) indicating that process must be served upon the Director General in the same way that service had been made against the corporation which he represents.

2. CARRIERS—TIME TO SUE—LIMITATION IN BILL OF LADING.—In an action by a shipper against a connecting carrier for damages from delay and neglect as to a shipment for which the shipper received from the initial carrier a bill of lading providing that, "except where the loss, damage or injury complained of is due to delay or damage while being loaded or unloaded, or damage in transit by carelessness, or negligence, as condition precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after reasonable time for delivery has elapsed, and suit for loss, damage or delay shall be instituted within two years and a day after a reasonable time for delivery has elapsed, held that suit must be brought within two years and a day, as the exception relates only to the written notice of the claim.

Appeal from Columbia Circuit Court; *C. W. Smith,* Judge; affirmed.

*Joe Joiner,* for appellant.

1. Plaintiff's right to sue in the county of his residence was never challenged by any special plea. Instruction No. 3, therefore, to the effect that if the damage occurred either on the line of the St. Louis Southwestern Railway Company or the St. Louis Southwestern Railway Company of Texas, plaintiff would be entitled to judgment against the Federal agent, was clearly within the provisions of general order No. 18, and should have been given. *Alabama & V. Ry. Co.* v. *Journey,* 42 Sup. Ct. Reporter, p. 6.

2. The limitation in the bill of lading issued by defendant Louisiana & Northwestern Railroad, to the ef-

fect that in certain cases suit must be brought within two years and one day after the loss or damage, does not apply. This provision, having been written by the defendant, will be construed most strongly against it. The provision does not stipulate that suit must be brought for loss, damage or delay within two years and one day against each carrier or any one carrier of the shipment, such as the initial carrier. When suit was brought on November 4, 1919, and service was had on the Director General on December 11, 1919, a suit was instituted for the damage within the meaning of the bill of lading. The regular three year statute applies to the others. The statute will not run while a suit is pending against any one of the defendants to a common cause of action. 67 Ark. 340; 85 *Id.* 144; 49 *Id.* 248; 223 S. W. (Tex.) 340; *Id.* 192; 218 S. W. (Tex.) 5.

If there was loss or damage in this case, it was in transit. Therefore it falls within the exception in the bill of lading. At any rate, it was a jury question, and the court erred in taking it from the jury by its instruction. 53 Ark. 381.

3. The plaintiff should have had judgment against the receiver. He did not answer, did not plead the limitation in the bill of lading. The receiving carrier is liable for loss or damages to goods or property when caused by negligence anywhere in transit. C. & M. Digest, § 924; 188 S. W. 1177.

*Daniel Upthegrove, J. R. Turney* and *Gaughan & Sifford,* for the Director General.

Appellant has confused the issue, which is, in fact, not a question of venue, but a question of jurisdiction. Under the Federal Control Act, and general order No. 50, in order to secure service of process on the Director General operating the St. Louis Southewestern Railroad of Texas, it would be necessary to serve such process as would have been good service on the Texas company under existing laws. Sec. 10 of Federal Control Act. Service in this case on the agent of the St. Louis

Southwestern Railway, at Waldo, in Columbia County, an agent in no way connected with the St. Louis Southwestern Railway Company of Texas, was not valid service on the Texas Company nor on the Director General operating the same. The trial court was therefore right in restricting plaintiff's right of recovery to damages arising between McNeil and Texarkana on the line of the St. Louis Southwestern Railway Company.

*Henry Stevens,* for appellees, La. & N. W. R. R. and the receiver.

1. Under the pleadings and the evidence, if plaintiff relied on the contract shown in the bill of lading for the prompt delivery of the car of potatoes to Dallas, it would devolve on him to show the failure of delivery by the Louisiana & Northwestern Railroad Company and the damages sustained by such failure. 44 Ark. 439; 52 *Id.* 246; 74 *Id.* 606; Encyc. Ev. pp. 6, 7. He would have to show also that the failure of delivery and the damage complained of was not the result of any interference on his own part. 80 Ark. 288; 6 Cyc. 379, 468.

2. The limitation in the bill of lading as to time of bringing suits is valid. 83 Ark. 502; 120 *Id.* 43.

A suit is begun when complaint is filed and summons issued thereon. C. & M. Dig., § 1049; 138 Ark. 10. Summons was issued and served on the Louisiana & Northwest Railroad Company on August 2, 1921. The damage complained of is alleged to have occurred in November, 1918.

There is nothing in the action against this defendant which is common to the other defendants. 6 Cyc. 487. The amendment filed in August, 1921, making the Louisiana & Northwest Railroad Company, and issuing summons thereon, fixes the date when suit was begun against it. 17 Ark. 608.

There is no merit in the contention that judgment should have been rendered against the receiver. A judgment against a receiver cannot be effectual unless it is also against the party for whom he was receiver. 17 Encyc. Pl. & Pr. 80; 27 S. W. 109.

HUMPHREYS, J.  Appellant instituted suit against the St. Louis Southwestern Railway Company, and Walker D. Hines, Director General, in the Columbia Circuit Court, to recover damages in the sum of $698.50 to a car of sweet potatoes, shipped by him from Magnolia, Arkansas, to Dallas, Texas, alleged to have been occasioned through the delay and neglect of the defendants.  It was alleged in the complaint that appellant delivered to the Louisiana & Northwestern Ry. Co. at Magnolia, Ark., for shipment to Dallas, Texas, by way of defendant's line of railroad and that of the St. Louis Southwestern Ry. Co. of Texas, 450 bushels of potatoes in baskets, with the right of stop-over at Nevada, Texas, receiving therefor from the initial carrier a bill of lading or shipment contract which contained the following clause:  "Except where the loss, damage, or injury complained of is due to delay or damage while being loaded or unloaded, or damage in transit by carelessness or negligence, as condition precedent to recovery, claims must be made in writing to the originating or delivering carrier within six months after delivery of the property, or, in case of failure to make delivery, then within six months after a reasonable time for delivery has elapsed; and suit for loss, damage or delay shall be instituted within two years and one day after delivery of the property, or, in case of a failure to make delivery, then within two years and one day after a reasonable time for delivery has elapsed."  Summons was issued on November 4, 1919, and served December 11, 1919, on the agent of the Director General at Waldo, Arkansas, and issued and served on the St. Louis Southwestern Ry. Co. on August 2, 1921, by delivering a copy to its agent at Waldo, Arkansas.  Answers were filed by both defendants denying the material allegations of the complaint.  At the time of the shipment the initial carrier, which was not under government control, was in the hands of E. R. Bernstein as receiver.  The initial carrier and its receiver were made parties to the suit, and both filed a motion to make the complaint more speci-

fic, and said carrier a separate answer, denying the material allegations of the complaint, on February 25, 1921. It seems that later, on August 2, 1921, a summons was issued and served upon them by delivering a copy thereof to their agent at Magnolia, Arkansas. The receiver filed no answer. The cause was submitted upon the pleadings and testimony introduced by the respective parties, and the instructions of the court, which resulted in a verdict and judgment in favor of all the appellees, from which is this appeal.

The facts material to a determination of the issues involved in this appeal, as reflected by the record, are as follows: The initial carrier was never under the supervision of the Director General of Railroads. The connecting carrier was a Missouri corporation, doing business in Arkansas, and the delivering carrier a Texas corporation, doing business in that State, being separate and distinct corporations, but both, at the time, being controlled and operated by the Director General of Railroads.

The shipment of potatoes was delivered to the initial carrier, in good condition, on November 1, 1918, at Magnolia, Arkansas, and left there at 7 p. m. The car was received by the St. Louis & Southwestern Railroad Company, the connecting carrier, at McNeil, Ark., at 9:30 p. m. on the same date. The connecting carrier delivered the car to the St. Louis & Southwestern Rd. Co. at Texarkana, and it arrived at Nevada, Texas, its stopover place, on the 3rd or 4th of November, 1918. Appellant examined the car there, and after considerable effort, sold 20 bushels of potatoes, but was unable to sell more on account of the per cent. of rotten ones. The car did not reach Dallas, its destination, until November 11th, at which time the potatoes had greatly deteriorated. The evidence tended to show an unreasonable delay in delivery; that on this account the potatoes were damaged, and that the damage occurred in transit. There is no proof that the potatoes were damaged while in the

possession of the initial or connecting carrier. The first deterioration in them was discovered when the car was opened at Nevada, Texas. They were then in possession of the delivering carrier.

Proceeding upon the theory that the Director General of Railroads was in court, under the summons issued and served upon his agent at Waldo, Arkansas, only as the representative of the St. Louis Southwestern Railroad Company, and not the representative, by virtue of the service upon him, of the St. Louis Southwestern Railroad Company of Texas, the trial court instructed the jury that, before they could find against the Director General they must find that the damage occurred between McNeil and Texarkana, on the line of the St. Louis Southwestern Rd. Co. We think the interpretation placed upon the Federal Control Act by the trial court, as reflected by the instruction, is correct. While under the act, general orders Nos. 18 and 18a were made directing all suits against the Director General to be brought in the county or district where the plaintiff resides, or county or district where the cause of action arose, such orders were not intended to change the manner or mode for the service of process in the several States. We think the provision relating to service of process under general order No. 50, dated October 28, 1918, indicates very clearly that the service of process in actions, suits, and proceedings against the Director General of Railroads shall be made in the same way as formerly made against the transportation entity he represents. In other words, to bring the Director General of a particular transportation corporation into court in this State, the same process must be resorted to necessary to bring the corporation itself into court. Under the process in the instant case the Director General of Railroads is in court only in his capacity as representative of the St. Louis Southwestern Railroad Company and not as the representative of the Texas corporation bearing the same name.

Proceeding on the theory that the bill of lading, made the basis of the suit, exempted the initial carrier and its receiver from liability unless suit was brought within two years and a day, the court instructed the jury to that effect.   Appellant contends that on account of this instruction the judgment should be reversed.   The correctness of this instruction must depend on the proper interpretation of the provision in the bill of lading heretofore set out.   After a careful reading and consideration of the clause, we have concluded that the exceptions as to damage to property in transit applies only to the notice in writing of the claim required to be given to the originating or delivering carrier, and does not relate to the time in which suit must be commenced.   The language, as well as the punctuation, indicates this.   The exception is directly connected with the notice but is separated from the time in which to bring suit by a semicolon.   Again, there is much reason in making an exception where only a short time is given to the injured party to notify the carrier, but no good reason why an exception should be made where ample time is given to commence a suit.   The undisputed proof shows that suit was not commenced against the initial carrier and its receiver for more than two years and a day after delivery was made.   The construction placed upon the clause in the bill of lading was correct. There was no joint liability between the initial and connecting carrier, so the pendency of the suit against the Director General and the connecting carrier does not prevent the application of the limitation in the bill of lading.

No error appearing, the judgment is affirmed.