LEYPOLDT & PENNINGTON COMPANY, APPELLANT, V. JAMES C. DAVIS, DIRECTOR GENERAL, APPELLEE.

FILED JUNE 24, 1924.  No. 22824.

1.  Evidence examined, and *held* to present questions for the jury, and to be sufficient to sustain the verdict.

2.  Carriers: AUTHORITY OF AGENT.  The station agent of a railroad company has no authority by virtue of his office to make a contract that the company will pay a claim for damages to a shipment caused by negligence, or arising out of the contract of shipment.

3. **Appeal:** HARMLESS ERROR.  Where there is sufficient evidence to enable the jury to apportion the damages between two defendants, and the verdict is for defendants, an instruction requiring such apportionment, if error, is without prejudice.

4. **Carriers:** LIABILITY: PERISHABLE FREIGHT.  A common carrier is not liable for injury to perishable freight due to the nature of the commodity in connection with natural causes.over which the carrier has no control.

APPEAL from the district court for Lincoln county:    J. LEONARD TEWELL, JUDGE.  *Affirmed.*

*Hoagland & Carr,* for appellant.

*C. A. MaGaw, T. F. Hamer, Douglas F. Smith, E. E. Whitted* and *J. L. Rice, contra.*

Heard before MORRISSEY, C. J., GOOD and DEAN, JJ., BLACKLEDGE and REDICK, District Judges.

REDICK, District Judge.

This action is brought by the plaintiff against the director general of railroads, as agent for the Chicago, Burlington & Quincy Railroad Company and Union Pacific Railroad Company, to recover the value of certain potatoes alleged to have been frozen during their transportation from Mitchell to North Platte, Nebraska.  They were shipped from Mitchell and carried as far as Northport over the Burlington line and from Northport to North Platte over the Union Pacific.  Plaintiff seeks to recover on two theories:  First, the negligence of the defendants in furnishing defective cars whereby the potatoes were subjected to the freezing weather; and, second, upon an alleged contract with the agent of the Union Pacific at North Platte.  The petition alleges that the cars furnished for this shipment were defective in that they contained large holes in the bottom thereof which permitted the cold air to enter from the outside and freeze the contents of the cars.  There is no evidence to support this allegation, and in so far as plaintiff's case rest upon negligence, it depends upon the general proposition that, where freight is received in good

order and arrives at point of destination in bad order, a *prima facie* case is made, and the burden is placed upon the railroad company to show that the damage was caused by some agency beyond its control, and not by its negligence.

There is some discussion in the briefs as to whether the action sounds in tort or in contract, but we think this is immaterial in view of the fact that a counterclaim for demurrage filed by defendants was withdrawn, and the liability of the defendants is substantially the same whether the case is founded upon negligence or the contract of shipment.

Defendants admitted the receipt of the shipment, denied any negligence during transportation, and allege that if any damage accrued to the shipment while in the possession of the defendants it was due to the inherent nature of the commodity. Each defendant also alleged that the shipment was delivered by it in the same condition in which it had been received. There was a verdict and judgment for defendants, and plaintiff appeals.

The potatoes were loaded on November 19, arrived at Northport the 23d, and at North Platte the 24th. No question is made of delay in shipment. The question of fact for the jury to determine was whether the potatoes were frozen, before, during, or after the completion of the transportation. Plaintiff introduced evidence tending to prove that the potatoes were delivered to the Burlington Railroad in good condition, and upon arrival at North Platte about one-half of them were frozen and thereby rendered valueless, and evidence of the amount of damages. The evidence bearing upon the time when the potatoes were frozen is substantially as follows: The potatoes were dug between the 3d and 15th of November, and the maximum and minimum temperatures each day during that period are shown, from which it appears that from the 3d to the 8th the minimum ranged from 16 to 26 degrees above zero, 10 degrees on the 9th, 16 on the 10th, 15 on the 11th, 2 below on the 12th, 1 below on the 13th, 17 above on the 14th, and 24 above on the 15th. After being dug potatoes were placed in a cellar six feet deep and covered with a foot of

hay and straw and three or four inches of dirt, and when they were taken out of the cellar and loaded on the cars about ten bushels of frozen potatoes were thrown out. And in answer to the question whether or not the potatoes were frost-bitten at that time, the witness who sold and assisted loading them answered: "I think not." The potatoes were graded No. 1 by the state inspector at the time of loading. Temperatures were shown from November 19th to the 23d at Mitchell and Bridgeport (across the river from Northport), giving minimums of 26, 31, 24, 29, and 31, respectively, the maximum ranging from 42 to 61 degrees. The range of temperatures at North Platte on the 24th to 30th, inclusive, respectively, were 55 to 35, 35 to 11, 5 to zero, 10 above to 2 below, 29 above to 2 below, and 16 above to 2 below. Unloading began the 25th and was completed the 29th or 30th, the transfer from the cars to plaintiff's warehouse being accomplished by trucks, the potatoes being covered by a tarpaulin, and each trip occupying above five minutes. Unloading was carried on only between 10 a. m. and 4 p. m. on account of the severity of the weather, the doors of the cars being closed while unloading was not going on. Plaintiff introduced evidence to the effect that upon opening the car doors at North Platte there was frost on the outside of the potato sacks, and that the frozen potatoes were found in the exterior rows of sacks at the sides, top and bottom.

We think the evidence above summarized fairly presented a question for the jury as to the point of time at which the potatoes were frozen, and their finding is supported by sufficient evidence and should not be disturbed. The minimum temperatures during the period of shipment were only slightly below freezing, while both before and after shipment they reached much lower levels. The shipment was made in refrigerator cars, in good condition so far as the evidence shows; the defendants were not required to furnish heat for the cars, and if any of the potatoes were frozen during shipment, it was for the jury to draw the inference whether such fact was due to the inherent nature

,of the commodity in connection with natural causes over which defendants had no control, or to lack of proper care. Plaintiff cites *Nelson & Co. v. Chicago & N. W. R. Co.*, 102 Neb. 439, but in that case there was an unexplained delay in the shipment, which the jury may have found was the cause of the loss. In the case at bar no negligent act of defendant is shown, and the proper inferences from the facts and circumstances shown were for the jury to draw.

Plaintiff showed that he refused to accept the potatoes on account of their condition upon arrival at North Platte, and offered to prove that the station agent agreed that, if he would take the potatoes and sort them out, the railroad company would pay his damages and cost of sorting, which offer was rejected by the court, and error is assigned thereon. The assignment is not well taken. There was no evidence of any authority of the station agent to bind the railroad company by such an agreement. That he had no such authority by virtue of his office is distinctly held in *Gauthier & Son v. Hines*, 120 Me. 476, and this is undoubtedly the law. Plaintiff cites *Chicago, R. I. & P. R. Co. v. Burke,* 82 Okla. 114, but in that case the contract was made by the claim agent of the railroad company whose duty it was to make settlement of such claims.

A number of objections are made to the instructions, and we have considered them all, but find it necessary to refer to only one of them. By instruction No. 10 the jury were told that if they found for the plaintiff they should find separately the amount of damage, if any, which accrued to the potatoes while they were under the control of the defendant operating the Burlington Railroad and the Union Pacific Railroad, respectively. The complaint is that there was no evidence from which the jury might determine this question, and that it was therefore impossible for the jury to find for the plaintiff in any amount. If this instruction was erroneous, it was probably without prejudice to the plaintiff, the verdict being generally for the defendants; but we think that the maximum and minimum temperatures established by the evidence prior

to, during the period of the shipment, and subsequent thereto, furnish a reasonable basis upon which the jury might rest a separate finding as to each defendant.

We find no prejudicial error in the record, and the judgment is

AFFIRMED.

Note—See Carriers, 10 C. J., secs. 148, 301, 600, 601; Appeal and Error, 4 C. J., sec. 3026.

