DYE PRODUCE COMPANY, Appellant, v. JAMES C. DAVIS, Director General of Railroads, Appellee.

**ORIGINAL NOTICE:** Personal Service—Director General of Railroads. 1 Service of an original notice on a *delivering* carrier did not, under the War Emergency Act, bring the director general of railroads into court as a representative of the *initial* carrier.

**ORIGINAL NOTICE:** Personal Service—Service on Agent. The fact 2 that a delivering carrier is, in point of law, the agent of the initial carrier in completing a shipment does not authorize service of an original notice on the initial carrier by service on the delivering carrier.

**ORIGINAL NOTICE:** Petition—Failure to File—Dismissal. After a 3 cause has gone to judgment as to the only party defendant, no procedure exists which will permit the reopening of the case by service of an original notice on a new party and trying a new case on the old pleadings.

**TRIAL:** Instructions—Statement of Issues—Failure to Cover Allega- 4 tion. An allegation that the frozen condition of a shipment was negligently caused by the delivering carrier (who was in court) is properly presented by an instruction substantially so directing the jury, even though the plaintiff has alleged that the shipment was unfrozen when received by the initial carrier (who was not in court), and even though the instructions made no mention of such latter allegation.

**CARRIERS:** Carriage of Goods—Non-insurer of Perishable Goods. A
5. carrier is not, under the common law, an *insurer* against the freezing of
articles which are subject to being frozen. Ordinary care measures
the extent of its liability.

**CARRIERS:** Carriage of Goods—Presumption from Good and Bad De-
6 livery. A showing that goods were in good condition when received
by a carrier and in bad condition when delivered, presumptively es-
tablishes, in and of itself, the carrier's negligence. Error neces-
sarily results from instructing that the shipper must show *specific
acts* of negligence on the part of the carrier. (See Book of Anno.,
Vol. 1, Sec. 8038, Anno. 11.)

**APPEAL AND ERROR:** Harmless Error—Non-right of Party to Re-
7 cover. Principle reaffirmed that an erroneous instruction against a
plaintiff will not work a reversal if the plaintiff has no right in any
event to recover. (See Book of Anno., Vol. 1, Sec. 11548, Anno. 74
*et seq.)*

**CARRIERS:** Carriage of Goods—Unfrozen Condition—Jury Question.
8 A jury question is made on the issue whether goods were unfrozen
when delivered to the carrier, by testimony tending to show (1) that
no freezing temperature had existed at the place of initial shipment
at and for some substantial time prior to the delivery, and (2) that,
when goods were delivered, they were frozen, near the doorway,
along the sides, and at the ends of the car.

FAVILLE and ALBERT, JJ., dissent as to weight to be accorded to weather
reports.

Headnote 1: 33 Cyc. p. 45. Headnote 2: 14a C. J. p. 807 (Anno.)
Headnote 3: 33 Cyc. p. 45; 38 Cyc. p. 1297 (Anno.) Headnote 4: 38
Cyc. p. 1717. Headnote 5: 10 C. J. pp. 121, 122. Headnote 6: 10 C. J.
pp. 371, 394. Headnote 7: 4 C. J. p. 1042. Headnote 8: 10 C. J. p. 391
(Anno.)

Headnote 5: 39 L. R. A. (N. S.) 640, 645. Headnote 6: 4 R. C. L.
917.

*Appeal from Des Moines Municipal Court*—O. S. FRANKLIN,
Judge.

JUNE 25, 1925.

OPINION ON REHEARING JUNE 21, 1926.

REHEARING DENIED DECEMBER 16, 1926.

Action to recover from the director general of railroads under Federal control, for damage to a shipment of vegetables. There was a verdict for the defendant, and from a judgment thereon the plaintiff appeals.—*Reversed and remanded.*

*A. D. Pugh,* for appellant.

*Carr, Cox, Evans & Riley,* for appellee.

Vermilion, J. —The case is before us after further argument on resubmission, following the granting of a rehearing, which was petitioned for, upon different grounds, by both parties.

The action grows out of the alleged damage by freezing to a carload of fresh vegetables shipped from Los Angeles to Des Moines in December, 1919. This was during the period of Federal control of the railroads. The petition was entitled merely as against the director general of railroads, by name and title. It was alleged in the petition that the defendant, the director general, was, at the time of the shipment, operating connecting lines of railway from Los Angeles to Des Moines, consisting of the Atchison, Topeka & Santa Fe Railway Company's lines and the Chicago Great Western Railroad Company's lines, over which the shipment was transported on a through bill of lading. It was further alleged that, when the shipment was received by the defendant at Los Angeles, it was not frozen or damaged by freezing, and when delivered in Des Moines, was so damaged, and that this was occasioned by the negligence of the defendant. The original notice was served on the agent of the Chicago Great Western Railroad Company in Des Moines. The answer was a general denial.

The shipment originated on the line of the Atchison Company at Los Angeles, and was transported over that line to Kansas City, where it was transferred to the line of the Great Western Company, and carried over the lines of the latter company to its destination at Des Moines. The case was submitted to the jury only upon the question of liability of the director general, operating the lines of the Great Western.

I. It appears that the court below was of the opinion, and so announced, that there was no competent evidence to show

that, when the goods were delivered to the carrier at Los Angeles, they were in good condition and unfrozen, but, nevertheless, submitted to the jury the question whether the shipment was damaged after it came upon the lines of the Great Western. It is plain that the effect of this ruling and action of the court was merely to deny a recovery against the director general as the representative of the Atchison Company.

1. ORIGINAL NO-
TICE: personal
service: direc-
tor general of
railroads.

Whatever may have been the reason of the lower court for holding that there was no liability shown on the part of the director general as the representative of the Atchison Company, its action in refusing to submit the question of such liability to the jury was unquestionably right. In *Davis v. Donovan*, 265 U. S. 257 (68 L. Ed. 1008), the Supreme Court of the United States settled the question involved, upon which there had been some difference of opinion among the courts. There the circuit court of appeals had said:

"The sole point is that the outside litigant, such as this libelant, need look only to the director general as the party to respond for damage caused by negligence on the part of any of the railroads which he was operating pursuant to the Federal control statutes."

Speaking to this point, the Supreme Court said:

"We cannot accept the conclusion reached by the court below. During the year 1919, the United States were in possession and complete control, by the director general, of the important railroad systems throughout the country. *Northern P. R. Co. v. North Dakota*, 250 U. S. 135. As the representative of the United States, he was subject to be sued for the purposes, to the extent, and under the conditions prescribed by statute and orders issued thereunder,—and not otherwise. *DuPont De Nemours & Co. v. Davis*, 264 U. S. 456."

After setting out the substance of the pertinent portion of the Federal Control Act and of General Order 50-A of the director general, the court continued:

"The effect of §10 and General Order 50-A was discussed in *Missouri P. R. Co. v. Ault*, 256 U. S. 554, 560; and it was there pointed out that while the transportation systems were controlled and administered by the United States, they were treated as separate entities, 'regarded much as ships are re-

garded in admiralty,' and 'dealt with as active, responsible parties, answerable for their own wrongs.' As well pointed out in *Manbar Coal Co. v. Davis,* Circuit Court of Appeals, Fourth Circuit, 297 Fed..24, no one was given the right to sue the director general as operator of all railroads, but his liability was carefully limited to such as would have been incurred by some particular carrier if there had been no Federal control.''

See, also, *Granquist v. Duluth, M. & N. R. Co.,* 155 Minn. 217 (193 N. W. 126), and *Farr v. St. Louis S. W. R. Co.,* 154 Ark. 585 (243 S. W. 800).

We are of the opinion that the director general was brought into court and was in court only as the representative of the government, in control and management of the railway company upon whose agent notice was served, the Great Western, and that this is true, notwithstanding the allegations of the petition that he was in control of both railways, and the case was entitled against him by name and title only, and that he answered as the ''defendant.'' Service, before Federal control, upon an agent of the Great Western Company would not have brought the Atchison Company into court. Under General Order 50-A, service of process might be made upon officials operating a railroad for the director general, as formerly permitted in actions against the road. As said in the cited case, the director general, as the representative of the government, can be sued to the extent and under the conditions prescribed by statute and orders issued thereunder, and not otherwise.

The appellant is understood to insist, however, that there was service on the Atchison Company, and that, therefore, the director general, in his capacity as a representative of the government in control of the Atchison, was in court.

2. ORIGINAL NOTICE: personal service: service on agent. This contention is bottomed upon the proposition that the delivering carrier is the agent of the initial carrier in respect to a through shipment, and that the shipment in question was so connected with this agency that service upon the delivering carrier would be service upon the initial carrier, under Section 3529, Code Supplement, 1913. (Section 11072, Code of 1924). The argument is that Federal statutes make the initial carrier in a through interstate shipment liable for any loss or damage caused by any carrier over whose

lines it may pass (8 Compiled Statutes, Section 8604-a), and that decisions of the United States Supreme Court (notably *Missouri, K. & T. R. Co. v. Ward*, 244 U. S. 383 [61 L. Ed. 1213]) hold that the connecting lines are, in effect, mere agents whose duty it is to forward the goods under the contract made with their principal, the initial carrier. The precise question has been decided against the contention of appellant in *St. Louis S. W. R. Co. v. Alexander*, 227 U. S. 218 (57 L. Ed. 486), and in *Basham's Admr. v. Missouri Pac. R. Co.*, 201 Ky. 807 (258 S. W. 690). See, also, *Jones v. Illinois Cent. R. Co.*, 188 Iowa 850.

In this view of the case, there was no error in refusing to submit to the jury the question of the liability of the director general, as the representative of the Atchison Company, for damage to the shipment. In that respect, a correct result was reached, and the ground upon which the lower court based its conclusion, inasmuch as the case against him as the representative of the Great Western Company was submitted to the jury, is immaterial. The plaintiff, in any event, secured all it could rightly claim at this point,—that is, the submission to the jury of its claim against the director general, as the representative of the Great Western; and it cannot be heard to complain of the mere ground of the ruling.

II. After a verdict for the defendant on the case as submitted to the jury, and judgment thereon, the plaintiff, without filing a new petition, caused notice to be served on an alleged 3. ORIGINAL NO-agent of the Atchison Company, as agent of TICE: petition: the director general. The latter made a special failure to file: dismissal. appearance, in response to this notice, and moved to dismiss because no petition was on file. This motion was sustained. The ruling was proper. We know of no statute or recognized procedure—and none is pointed out—that would permit the reopening of a case that has been tried and gone to judgment, by the service of an original notice upon a new party, and the trying of a new case on the pleadings on file in the case that had been disposed of. There was no petition on file. Section 3515, Code of 1897 (Section 11057, Code of 1924).

This belated attempt to bring the director general, as the representative of the Atchison Company, into the case is quite inconsistent with appellant's contention that he was always in

the case in that capacity, and that the court erred in not submitting to the jury the question of his liability, as the representative of that company. If the director general, as the initial carrier, was in court, there was an adjudication that he was not liable in that capacity, and if the adjudication was erroneous, the error could only be corrected on appeal. It could only be upon the theory that he was not in court as the initial carrier, and there was no adjudication upon his liability, as such, that he could thereafter be required to meet the claim in this or a new action. Without saying that this situation would be controlling upon the original question, it is a very strong circumstance tending to show that plaintiff did not regard the judgment as an adjudication of such liability.

III. Appellant complains that the court below, in stating the issues, did not state that the plaintiff alleged that the shipment was unfrozen when received for transportation at Los

**4. TRIAL: instructions: statement of issues: failure to cover allegation.**

Angeles. The court instructed, in substance, that the plaintiff's claim was that the shipment was damaged by the failure of the Great Western Company to perform its legal duty as a common carrier while the goods were being transported from Kansas City to Des Moines. We think there was a sufficient statement of the issues, especially in the absence of a request for further instructions.

IV. Complaint is made that the court in its instructions required of the defendant the exercise of only ordinary care and diligence for the protection of the shipment while in his possession.

As to most commodities intrusted to a common carrier for transportation, the general rule at common law is that the carrier is an insurer against all risks incident to the transportation, save such as result from the act of God

**5. CARRIERS: carriage of goods: non-insurer of perishable goods.**

or of the public enemy. But where the goods are of a perishable character, and their destruction or injury is due to their inherent qualities, the carrier is not an insurer against loss from such cause, but is only required to exercise reasonable care and diligence to protect them from injury while in its custody, and is liable for only such deterioration or loss as is attributable to its own negligence. *Gilbert Bros. v. Chicago, R. I. & P. R. Co.*, 156

Iowa 440; *Brandeis v. Chicago, B. & Q. R. Co.*, 164 Iowa 702. See, also, 10 Corpus Juris 121, 122, and cases there cited in support of the text.

This rule has frequently been applied where the shipment was susceptible to injury by freezing, and was so injured or destroyed. *Michellod v. Oregon-Washington R. & N. Co.*, 86 Ore. 329 (168 Pac. 620); *Schwartz & Co. v. Erie R. Co.*, 128 Ky. 22 (106 S. W. 1188, 15 L. R. A. [N. S.] 801); *Fort v. Denver & R. G. R. Co.*, 69 Colo. 441 (195 Pac. 109); *Swetland v. Boston & A. R. Co.*, 102 Mass. 276; *Standard Pickle Co. v. Pere Marquette R. Co.*, 222 Mich. 639 (193 N. W. 300); *Leypoldt & Pennington Co. v. Davis*, 112 Neb. 350 (199 N. W. 463).

The plaintiff pleaded no provisions of the shipping contract or bill of lading changing the common-law liability of the defendant.

The vegetables in question were of a perishable nature, and, from their character, subject to injury by freezing. The defendant was not an insurer against injury from such cause, but was only liable for such damage as was occasioned by want of reasonable care and diligence. There was no error in the instructions in this respect.

V. The court instructed that the burden was upon the plaintiff to establish negligence on the part of the Great Western Company substantially as alleged in the petition.

The Great Western Company was not a party, and the instruction failed to distinguish between it and the director general, as the representative of the government in control and operation of its railroad, who was the party defendant. This misstatement was, perhaps, not prejudicial, in view of the whole record. The instruction was, however, clearly erroneous, in that it put upon the plaintiff the burden of establishing particular acts of negligence on the part of the defendant. The rule is firmly established that the shipper makes out a prima-facie case where he establishes the receipt of the goods by the carrier in good condition and the delivery at destination in a damaged condition; and that the burden is upon the carrier to establish facts which will relieve it from liability, such as that the damage resulted from the act of God or of the public enemy, or was occasioned by the perishable character of the shipment

6. CARRIERS: carriage of goods: presumption from good and bad delivery.

or its inherent susceptibility to injury from natural causes, and without negligence on the part of the carrier.

In *Swiney v. American Exp. Co.*, 144 Iowa 342, we said:

"This feature of the rule may be stated as follows: That while a carrier, whether negligent or otherwise, is generally liable as an insurer for loss and damage occurring to goods while in its hands for transportation, it is not liable, in the absence of negligence on its part, for any loss or damage caused by or resulting from the perishability or inherent weakness or vice in the subject of shipment. For instance, if fruit which is carried with due speed and proper care decays, or if the shipment be of live stock, and it die of disease or inherent weakness, or become sick without fault of the carrier, or receive injury through its own vicious propensities, in such case the law very properly places the loss upon the owner, and not upon the carrier. *Blower v. Railroad Co.*, L. R. 7 C. P. 662; *Kinnick v. Railroad Co.*, 69 Iowa 665; *Betts v. Railroad Co.*, 92 Iowa 343. But this principle is not to be so extended as to relieve the carrier from the duty to take notice of the ordinary weakness, character, and propensities of domestic animals, and to make such provision against loss or injury therefrom as may reasonably be done in furnishing the means of transportation and providing for the protection of the property during transit. *Kinnick v. Railroad Co.*, supra; *Betts v. Railroad*, supra. It logically follows from these rules, and from the fact that ordinarily a carrier alone has knowledge of the manner in which the shipment has been forwarded and cared for, that, where property, whether dead freight or live stock, is found to have suffered loss or damage in transportation, especially where the shipment is not accompanied by the shipper, or a caretaker in his service, the burden is upon such carrier to show facts which relieve it from liability."

See, also, *Owens Bros. v. Chicago, R. I. & P. R. Co.*, 139 Iowa 538; *Glassman v. Chicago, R. I. & P. R. Co.*, 166 Iowa 254; *Carr v. Chicago, R. I. & P. R. Co.*, 173 Iowa 444; *Erisman v. Chicago, B. & Q. R. Co.*, 180 Iowa 759; *Buck v. American R. Exp. Co.*, 195 Iowa 1024.

It has been held, where an animal was being transported, and was found dead at destination, that the plaintiff must further show that death was due to human agency. *Nugent v.*

*Chicago & N. W. R. Co.*, 183 Iowa 1073. Human agency is as present in a failure to take required precautions as in an affirmative act. The injury here complained of was shown to be of a character and from a cause that, owing to the perishable nature of the shipment, it was the duty of the carrier to have exercised ordinary care and diligence to guard against. *Beard & Sons v. Illinois Cent. R. Co.*, 79 Iowa 518; *Taft Co. v. American Exp. Co.*, 133 Iowa 522; *Colsch v. Chicago, M. & St. P. R. Co.*, 149 Iowa 176; *Buck v. American R. Exp. Co.*, supra.

VI. While there was error in placing upon plaintiff a greater burden of proof than it was required, under the law, to carry, this will not entitle it to a reversal if, upon the rec-

7. APPEAL AND ERROR: harmless error: nonright of party to recover.

ord made, it must be said that it was not, in any event, entitled to a verdict. If, upon the evidence, a verdict for the plaintiff could not be sustained, plaintiff could not be prejudiced by a verdict against it rendered under an erroneous instruction. *Newell & Co. v. Martin & Wagner*, 81 Iowa 238; *Brown v. Hunt & Shuetz Co.*, 163 Iowa 637; *Mulroney Mfg. Co. v. Weeks*, 185 Iowa 714.

No witness testified to the actual condition of the vegetables, or that they were unfrozen, when delivered to the initial carrier at Los Angeles. There was evidence tending to

8. CARRIERS: carriage of goods: unfrozen condition: jury question.

show that, on the day of delivery, on the day following, and for fifteen days before, there had been no freezing temperature in Los Angeles. There was also in evidence the bill of lading

issued by the initial carrier at Los Angeles, which contained a receipt for the property described therein, "in apparent good order, except as noted (contents and condition of contents of packages unknown)." This testimony was not stricken from the record or withdrawn from the consideration of the jury. The vegetables were packed in crates and boxes. The car appears to have had a false bottom, and was filled nearly to the top. There was testimony that the vegetables were found at Des Moines to be frozen in the doorway, sides, and ends of the car.

If it be conceded, as contended by appellee,—without, however, being so decided,—that the recital in the bill of lading was not sufficient to establish *prima facie* the unfrozen condition of

the shipment at Los Angeles, we are of the opinion that there was in the record evidence sufficient to carry the case to the jury on that question. It might have been found, from the location of the frozen, vegetables in the car and the fact that there was no freezing weather at Los Angeles at the time of delivery and for some time before, that the vegetables were frozen only after being delivered to the initial carrier.

It is doubtless true that there are localities not far distant from Los Angeles where, owing to differences in altitude, there may be considerable variations in temperature. But it is matter of common knowledge and experience that fresh vegetables, such as were in this shipment, are produced in wholesale quantities in November, only in localities where ordinarily they are not subject to freezing. When it was shown that there had been no freezing temperature in Los Angeles for fifteen days before the shipment was delivered to the carrier, and that the vegetables in the more exposed portions of the car were frozen, we think the jury would have been justified in finding that the shipment was not frozen when received by the carrier at Los Angeles, notwithstanding that there are mountainous regions in that section where the temperature may have been below freezing.

Where goods are shown to have been delivered to the initial carrier in good order, a presumption arises that they continued in that condition when received by the connecting carrier. *Beard & Sons v. Illinois Cent. R. Co.*, supra; *Emery & Co. v. Wabash R. Co.*, 183 Iowa 687; *Erisman v. Chicago, B. & Q. R. Co.*, supra.

Since there was evidence sufficient to take the case to the jury, the appellant was prejudiced by the erroneous instruction that required it to establish specific negligence, when all it was bound to do was to show the delivery of the shipment to the initial carrier in an unfrozen condition, and that it was frozen or damaged by freezing when delivered by the terminal carrier at destination.

There are other assignments of error, but they are either without merit, or the questions are not likely to arise on a retrial.

For the error pointed out, the judgment must be, and is, reversed, and the cause remanded.—*Reversed and remanded.*

DE GRAFF, C. J., and STEVENS and MORLING, JJ., concur.

EVANS, J., not participating.

FAVILLE, J., dissents.

FAVILLE, J. (dissenting in part).—I cannot agree to one part of the foregoing opinion. I agree that the appellant cannot recover in this case unless he first establishes that the perishable goods were delivered to the initial carrier in an unfrozen condition. For some reason, appellant took no depositions and offered *no* proof whatever as to the condition of said goods at said time, except certain weather reports regarding the temperature in Los Angeles about the time of the loading. Conceding that the weather conditions were properly proven, I cannot agree that this *alone* furnishes the necessary proof that the vegetables were in good condition at the time. I assume that it is a matter of common knowledge that vegetables and oranges *can* be frozen even in the territory adjacent to Los Angeles. If these weather reports are alone sufficient evidence of the physical condition of a shipment from Los Angeles, then the next time a carrier is sued for damages caused by the freezing of a carload of potatoes shipped from Iowa in midwinter, the carrier can raise a presumption that the potatoes were frozen when delivered, by producing weather reports showing that the thermometer was below the freezing point at the place of shipment on the date thereof. I would avoid such a result.

ALBERT, J., joins in this dissent.